## A95A0223. MOORE v. BERRY et al.
(458 SE2d 879)

RUFFIN, Judge.

Robbie Moore sued James and Kathryn Berry d/b/a Berry Sporting Goods ("the Berrys") for injuries he sustained when the tree-climbing stand he purchased from the Berrys' store collapsed and caused him to fall from a tree. Moore alleged the Berrys were liable under both implied and express warranties by virtue of the representations made to him prior to the sale by Mr. Berry and his sales clerk that the tree stand was "probably the safest one on the market" and that there is "no way you can fall in this stand." The Berrys do not deny these statements were made, and Moore swore that he relied on the statements in deciding to purchase the product. The trial court granted the Berrys' motion for summary judgment on both theories of recovery and Moore appeals.

1. In two enumerations of error, Moore contends that the trial court erred in finding as a matter of law that the tree stand had a patent defect and that recovery under an implied warranty of merchantability was therefore precluded. OCGA § 11-2-314 provides that a contract for the sale of goods implies a warranty of merchantability of the goods. OCGA § 11-2-314 (2) (c) defines the term merchantable as goods which "[a]re fit for the ordinary purposes of which such goods are used. . . ." But an implied warranty protects the buyer only against latent defects which are not discoverable by the exercise of caution on his part. See *Smith v. Northeast Ga. Fair Assn.*, 85 Ga. App. 32, 36 (7) (67 SE2d 836) (1951). Moore's expert witness stated in his affidavit that the tree stand was defective and unsuitable for its intended purpose. The trial court determined that the affidavit suggested the alleged defect was patent, and accordingly, granted summary judgment on the issue of an implied warranty.

We do not read the affidavit as suggesting that the alleged defect — a veneered area of filler on the wooden stand — was patent; to the contrary, it is hard to imagine how a layperson, even upon close examination, could discern the defective area, no less appreciate its danger. Moreover, the Berrys' expert stated that the tree stand had no defect and that it was suitable for its intended purpose. Standing alone, the contradiction between the expert's conclusion that the defect was non-existent yet somehow patent is sufficient to raise an issue of fact. Accordingly, the trial court erred in determining that as a matter of fact, the alleged defect was patent. In addition, the state-

ment by Moore's expert that the product was not fit for its ordinary use was sufficient evidence to present a jury question on the issue of an implied warranty. See, e.g., *Gold Kist v. Williams*, 174 Ga. App. 849 (1) (332 SE2d 22) (1985).

2. Moore also contends the trial court erred in granting summary judgment with respect to whether an express warranty was created by virtue of his reliance on the statements by Mr. Berry and his sales clerk that the tree stand was "probably the safest one on the market" and that there is "no way you can fall" from it.

OCGA § 11-2-313 (1) describes the various ways express warranties are created. OCGA § 11-2-313 (1) (a) provides that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." The trial court held the statements made to Moore were mere sales talk or "puffing" and did not constitute a warranty. Citing *Taratus v. Smith*, 245 Ga. 107 (263 SE2d 145) (1980), the court also held the statements were too vague to create an express warranty.

We do not agree with the trial court that the statements made to Moore can be compared to a vague undertaking to treat an unspecified ailment, as the Supreme Court held was the case in *Smith*, supra. Indeed, if this constitutes vague language, we can hardly imagine words which could be deemed specific. Nor do we agree that the statements were mere sales talk or opinion. In *Bell v. Menzies*, 110 Ga. App. 436 (138 SE2d 731) (1964), the plaintiff hired the defendant for landscaping services, including transplanting grass. The defendant stated that the transplanted grass would live and that cold weather would not hurt it. The grass died, and we held that the defendant's representations were sufficient to establish a cause of action for breach of an express warranty. "The decisive test, in determining whether language used is a mere expression of opinion or a warranty, is whether it purported to state a fact upon which it may fairly be presumed the seller expected the buyer to rely and upon which a buyer would ordinarily rely. If the language used is of that character, the fact of reliance on the part of the buyer and the presumption of intent on the part of the seller which the law would raise in such a case would operate to create a warranty. No particular form of words is necessary to constitute a warranty. . . . [W]hether the words used amount to a warranty or not, is a question for the jury, under the rules of law applicable to the case." (Citations and punctuation omitted.) Id. at 438.

We find the representations that the tree stand is "probably the safest one on the market" and "there is no way you can fall" from it, upon which Moore relied, sufficient to raise a jury question as to whether they were an intentional affirmation relating to the quality of

the tree stand such that an express warranty was created. Accordingly, we find that the trial court also erred in granting summary judgment on this issue.

*Judgment reversed. Beasley, C. J., and Pope, P. J., concur.*

DECIDED JUNE 30, 1995.

*Moore & Hawthorne, W. James Moore, Marc D. Hawthorne,* for appellant.

*Long, Weinberg, Ansley & Wheeler, J. Kenneth Moorman,* for appellees.